AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of California

FILED
FEB 2 3 2018
CLERK U S DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                          DEPUTY

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )   Case No.   **18MJ0855**
One Motorola cellular phone; Model: XT1765; )
IMEI: 355674082525257; Including SIM card: )
8901260081921793200F085629 )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A-2

located in the ____Southern____ District of ____California____ , there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. Sections 952, 960 and 963 | Importation of Controlled Substances; Conspiracy to Import Controlled Substances |

The application is based on these facts:
See Attached Affidavit

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Joshua Gallion, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 2/23/18

_____
*Judge's signature*

City and state: San Diego, California

Magistrate Judge Jan M. Adler
*Printed name and title*

KPM

## AFFIDAVIT IN SUPPORT OF
## APPLICATION FOR SEARCH WARRANT

I, Joshua Gallion, Special Agent with the United States Department of Homeland Security, Homeland Security Investigations, having been duly sworn, depose and state as follows:

### INTRODUCTION

1. This affidavit supports an application for a warrant to search and seize evidence from the following telephones (together referred to as the "Target Telephones"), which are currently in the possession of Homeland Security Investigations, located at 2255 Niels Bohr Court, San Diego, CA 92154:

   a. **One Blu cellular phone** ("Target Telephone 1"); Model: Dash Music Jr; IMEI: 357432061657171; IMEI: 357432062667179[1]; including Telcel SIM card: 8952020516611162087FH6; more particularly described in **Attachment A-1**, incorporated herein by reference.

   b. **One Motorola cellular phone** ("Target Telephone 2"), Model XT1765; IMEI: 355674082525257; Including SIM card: 8901260081921793200F085629; more particularly described in **Attachment A-2**, incorporated herein by reference.

2. Based on the information below, I have probable cause to believe that in the property in Attachments A-1 and A-2, there is evidence and instrumentalities of illegal activity. Specifically, I have probable cause to believe that within the above property is evidence of violations of Title 21, United States Code, Sections 952, 960 and 963, Importation of Controlled Substances and Conspiracy to Import Controlled Substances.

3. The evidence to be searched for and seized is described in Attachment B, incorporated herein.

4. The following is based on my own investigation, my review of reports related to the investigation, and conversations with other law enforcement officers.

---
[1] Two IMEI numbers are printed on Target Telephone 1.

Since this affidavit is for a limited purpose, I have not included every fact I know about this investigation. I set forth only facts necessary to establish foundation for the requested warrant. Conversations and discussions below are set forth in substance unless noted. Dates and times are approximate.

## EXPERIENCE AND TRAINING

5. I am a Special Agent with the United States Department of Homeland Security, Immigrations and Customs Enforcement, Homeland Security Investigations (HSI). I have been employed by HSI since June, 2007. I am currently assigned to the HSI San Diego Office Cyber Intrusion Group, conducting investigations into a wide array of fraudulent activities in connection with computers and related technologies. Prior to my current assignment I was assigned to the San Diego Tunnel Task Force and conducted long term investigations involving narcotics smuggling. During the course of my career, I have been involved in investigating violations of federal law, including the illegal transfer and export of commodities, information, and services from the United States, money laundering, illegal import of narcotics, and fraud against the government.

6. I have received training in investigating various narcotics-related offenses, including the importation of narcotics and narcotics trafficking. Since becoming an HSI Special Agent, I have been involved in numerous narcotics trafficking investigations involving the importation of narcotics. I have also worked with other agents with extensive experience in narcotics smuggling investigations.

7. Through the course of my training, investigations and conversations with other law enforcement personnel, I am aware that it is a common practice for narcotics smugglers to work in concert with other individuals and to do so by utilizing cellular telephone and portable radios to maintain communications with co-conspirators in order to further their criminal activities. Conspiracies involving narcotics smuggling generate many types of evidence including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel and payment, names,

photographs, text messages, emails, instant messages, social networking messages, and phone numbers of co-conspirators.

8. Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics smuggling investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

   a. Drug smugglers will use cellular telephones because they are mobile and they have instant access to telephone calls, text, email, web, social networking websites, and voice messages.

   b. Drug smugglers believe that cellular telephones provide greater insulation and protection against court-ordered wiretaps, and they believe it is more difficult for law enforcement personnel to simultaneously track the originating and destination telephone numbers of calls placed to and from their cellular telephone.

   c. Drug smugglers will use cellular telephones because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit.

   d. Drug smugglers and their accomplices will use a cellular telephone because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations, so as to facilitate the further distribution of their illegal cargo inside the United States.

   e. Drug smugglers will use cellular telephone to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo.

   f. Drug smugglers will use a cellular telephone to notify or warn their accomplices of law enforcement activity including the presence and location of marked and unmarked units, as well as the operational status of Border Patrol checkpoints within the United States.

   g. The use of cellular telephones by smugglers tends to generate evidence that is stored on the cellular telephones, including, but not limited to emails, text messages, photographs, audio files, call logs,

address book entries, IP addresses, social network data, and location data.

## FACTS SUPPORTING PROBABLE CAUSE

9. On October 18, 2017, at approximately 4:43 p.m., Jose Salazar Saldivar ("Saldivar") entered the United States through the San Ysidro Port of Entry. He was the driver and sole occupant of a 2000 Pontiac Bonneville. At primary inspection, Saldivar presented his California State Identification Card to Customs and Border Protection Officer ("CBPO") Cruz and stated he was going to work in San Ysidro, California. Saldivar was asked if he was bringing anything into the United States and said he was not. CBPO Cruz conducted a government database query and received a computer-generated referral for Saldivar. Consequently, he referred Saldivar to the secondary inspection area for further inspection.

10. During secondary inspection, CBPO Renteria inspected the trunk of the vehicle and noticed that the carpet of the trunk was bolted down. CBPO Cruz accessed the spare tire well and observed that the rim was clean and that there was dried liquid on the walls of the tire. He also noticed the unusual heavy weight of the spare tire and could hear objects inside the tire hitting against its side wall. CBPO Truong used his canine to screen the Bonneville; the canine alerted to a trained odor coming from the spare tire of the vehicle. An officer ran the vehicle through the Z-portal x-ray machine, and CBPO Cordero observed anomalies in the vehicle's spare tire.

11. At approximately 5:30 p.m., CBPO Lucio conducted an inspection of the spare tire of the vehicle. CBPO Lucio cut the spare tire open and discovered packages containing a white crystal-like substance that field tested positive for characteristics of methamphetamine. CBPO Lucio removed 10 packages from the spare tire containing approximately 4.78 kilograms of methamphetamine.

12. Incident to Saldivar's arrest, the Target Telephones were found in his personal property. The Target Telephones were inspected and seized. Agents

AFFIDAVIT IN SUPPORT OF APPLICATION
FOR SEARCH WARRANT

4

attempted to download information from the Target Telephones at the San Ysidro Port of Entry, but were unsuccessful.

13. Based upon my experience and investigation in this case, I believe that Saldivar, as well as other persons as yet unknown, were involved in an on-going conspiracy to import methamphetamine or some other prohibited narcotics and to distribute those prohibited narcotics within the United States. Based on my experience investigating narcotics smugglers, I also believe that Saldivar may have used the Target Telephones to coordinate with co-conspirators regarding the importation and delivery of the methamphetamine, and to otherwise further this conspiracy both inside and outside the United States. I also know that recent calls made and received, telephone numbers, contact names, electronic mail (email) addresses, appointment dates, text messages, email messages, messages and posts from social networking sites like facebook, pictures and other digital information are stored in the memory of cellular telephone which identifies other persons involved in narcotics trafficking activities.

14. Drug conspiracies require detailed and intricate planning to successfully evade detection by law enforcement. In my training and experience, this requires planning and coordination in the days, weeks and often months prior to the event. Additionally, co-conspirators are often unaware of the subject's arrest and will continue to attempt to communicate with the subject after the arrest to determine the whereabouts of their valuable cargo. Given those facts, I respectfully request permission to search the **Target Telephones** for data beginning on August 18, 2017, up to and including October 19, 2017.

15. Based upon my experience and training, and all the facts and opinions set forth in this Affidavit, there is probable cause to believe that the **Target Telephones** contain evidence of violations of 21 U.S.C. §§ 952, 960 and 963, including communications, records, or data, including but not limited to emails, text messages, other social messaging applications (such as Whatsapp or Facebook) photographs, audio files, videos, or location data:

AFFIDAVIT IN SUPPORT OF APPLICATION
FOR SEARCH WARRANT

5

    a.    tending to identify attempts to import methamphetamine or some other controlled substance from Mexico into the United States and to distribute controlled substances within the United States;

    b.    tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers– used to facilitate the smuggling of methamphetamine or some other controlled substance from Mexico into the United States;

    c.    tending to identify co-conspirators, criminal associates, or others involved in smuggling methamphetamine or some other controlled substance from Mexico into the United States;

    d.    tending to identify travel to or presence at locations involved in the smuggling of methamphetamine or some other controlled substance from Mexico into the United States, such as stash houses, load houses, or delivery points;

    e.    tending to identify the user of, or persons with control over or access to, the subject telephone; and/or

    f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## PROCEDURES FOR ELECTRONICALLY STORED INFORMATION

16. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephone and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard

drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

17. Following the issuance of this warrant, I will collect the subject cellular telephones and subject them to analysis. All forensic analysis of the data contained within the telephones and their memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

18. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

## CONCLUSION

19. Based on all of the facts and circumstances described above, I believe that probable cause exists to conclude that Saldivar used the Target Telephones to facilitate the offense of importation of a controlled substance. The Target Telephones were likely used to facilitate the offenses by transmitting and storing data, which constitutes evidence and instrumentalities of violations of Title 21, United States Code, Sections 952, 960 and 963.

20. Because the Target Telephones were seized, there is also probable cause to believe that evidence and instrumentalities of illegal activity committed by Saldivar continue to exist on the Target Telephones.

21. Therefore, I respectfully request that the Court issue a warrant authorizing HSI Special Agents and/or other federal and state law enforcement officers specially trained in digital evidence recovery, to search the items described in Attachments A-1 and A-2, and seize items listed in Attachment B, using the methodology described above.

I swear the foregoing is true and correct to the best of my knowledge and belief.

Joshua Gallion
Special Agent, HSI

Subscribed and sworn to before me this 23rd day of February, 2018.

The Honorable Jan M. Adler
United States Magistrate Judge

AFFIDAVIT IN SUPPORT OF APPLICATION    8
FOR SEARCH WARRANT

## ATTACHMENT A-2

The item to be searched is as follows:

> One Motorola cellular phone
> Model XT1765;
> IMEI: 355674082525257;
> Including SIM card: 8901260081921793200F085629

Currently in the possession of Homeland Security Investigations, which is located at 2255 Niels Bohr Court, San Diego, CA 92154.

## ATTACHMENT B
## EVIDENCE TO BE SEIZED

The following evidence to be searched for and seized pertains to violations of Title 21 U.S.C. Sections 952, 960 and 963:

1.  Communications, records, or data including but not limited to emails, text messages, other social messaging applications (such as Whatsapp or Facebook) photographs, audio files, videos, or location data, beginning on August 18, 2017, up to and including October 19, 2017:

    a.  tending to indicate efforts to possess, transport, import, and deliver controlled substances from Mexico to the United States;

    b.  tending to identify other facilities, storage devices, or services–such as email addresses, IP addresses, phone numbers–that may contain electronic evidence tending to indicate efforts to possess, transport, import, and deliver controlled substances from Mexico to the United States;

    c.  tending to identify co-conspirators, criminal associates, or others involved in the possession, transportation, importation, and delivery of controlled substances from Mexico to the United, including both the source of supply and recruiter for the instant offense;

    d.  tending to identify travel to or presence at locations tending to indicate the preparation or execution of the possession, transportation, importation, and delivery of controlled substances from Mexico to the United States, including locations both in Mexico and the United States;

    e.  tending to identify the user of, or persons with control over or access to, the subject phone; or

    f.  tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data above.